**OKA et al., Appellants,**

v.

**YOUSSEFYEH et al., Appellees.**

**Appeal No. 87–1501.**

United States Court of Appeals, Federal Circuit.

Jan. 29, 1988.

Published Opinion Issued June 15, 1988.

Barry E. Bretschneider, Wegner & Bretschneider, Washington, D.C., argued, for appellants. With him on the brief, were Harold C. Wegner and Helmuth A. Wegner.

Stephen D. Murphy, Scully, Scott, Murphy & Presser, of Garden City, N.Y., argued, for appellees. With him on the brief, was Frank S. Digiglio.

Before MARKEY, Chief Judge, RICH, Circuit Judge, and MILLER, Senior Circuit Judge.

MARKEY, Chief Judge.

The Patent and Trademark Office Board of Patent Appeals and Interferences (board), in Interference No. 101,111, awarded priority of invention to junior party Youssefyeh et al. over senior party Oka et al., who relied on their October 31, 1980 Japanese filing date under 35 U.S.C. § 119. We reverse.

## Background

The sole generic count in the interference is directed to compounds possessing angiotensin converting enzyme inhibition activity, and is set forth as follows:

wherein:

R and $R_9$ are independently hydroxy or lower alkoxy;

$R_1$ is hydrogen, lower alkyl or aryl lower alkyl;

$R_2$, $R_3$, $R_4$, $R_5$, $R_7$ and $R_8$ are hydrogen or lower alkyl;

$R_6$ is indanyl;

and their pharmaceutically acceptable salts.

The compounds can be described as optionally esterified carboxyalkyl substituted dipeptides that contain two amino acid groups, one of which, typically a glycine, bears a group $R_6$, defined as an "indanyl group". The indanyl glycine of the count may be a Cycloaliphatically-bonded Indanyl, typically a 2–indanyl group, or an Aromatically-bonded Indanyl, typically a 5–indanyl group.

On February 27, 1980, one of Youssefyeh's co-inventors, Suh, recorded in his notebook this structural formula, encompassing billions of compounds within the class of 2-Indanyl Glycines:

## OPINION

Conception requires (1) the idea of the structure of the chemical compound, and (2) possession of an operative method of making it. *Coleman v. Dines,* 754 F.2d 353, 359, 224 USPQ 857, 862 (Fed.Cir.1985); *Alpert v. Slatin,* 305 F.2d 891, 894, 134 USPQ 296, 299 (CCPA 1962); *see Standard Oil Co. v. Montedison,* 494 F.Supp. 370, 407, 206 USPQ 676, 711–12 (D.Del.1980), *aff'd,* 664 F.2d 356, 212 USPQ 327 (3d Cir.1981). Youssefyeh quotes from *Townsend v. Smith,* 36 F.2d 292, 295, 4 USPQ 269, 271 (CCPA 1929):

Conception may conveniently be considered as consisting of two parts. The first part is "the directing conception" and may be defined as the idea or conception that a certain desired result may be obtained by following a particular general plan. The directing conception is often referred to as the inventive concept, thought or idea. The second part of conception is "the selection of the means for effectively carrying out the directing conception."

 When, as is often the case, a method of making a compound with conventional techniques is a matter of routine knowledge among those skilled in the art, a compound has been deemed to have been conceived when it was described, and the question of whether the conceiver was in possession of a method of making it is simply not raised. In the present case, the board itself recognized that conception required both a description, i.e., the idea, of a compound and possession of a method for making it. In denying Youssefyeh's claim of February 27, 1980, as its conception date, the board said:

It is Youssefyeh's position that conception occurred on February 27, 1980, * * * because the inventors believed on that date that the compounds could be prepared in accordance with conventional techniques. However, Bernstein, a skilled Ph.D. chemist, spent over six months and was not successful in preparing the 2–indanyl compounds within the scope of the count, a circumstance which indicates that the inventors did not contemplate an operative invention, e.g., an operative method for making the compounds as of February 27, 1980.

 The board made these not clearly erroneous findings: (1) because Youssefyeh had only the idea of a 2–indanyl class of compounds on February 27, 1980, it did not establish conception on that date; (2) Youssefyeh was in possession of a method of making a compound *outside* the scope of the interference count on October 10, 1980; (3) during the last week of October 1980, co-applicant Suh directed his assistant to use the October 10, 1980 method to prepare a species of a 5–indanyl class of compounds within the scope of the interference count; (4) the assistant successfully did so in December 1980; (5) Youssefyeh reduced the

invention to practice on January 9, 1981.[1] Based on findings (2), (3), and (4), the board found that "an operative procedure was realized for preparing the 5–indanyl compound" as of October 10, 1980. That finding was clearly erroneous.

The board correctly noted that conception of a species within a genus may constitute conception of the genus. *Miller v. Walker*, 214 USPQ 845, 847 (Bd.Pat.Int. 1982); *see Mikus v. Wachtel*, 504 F.2d 1150, 1151, 183 USPQ 752, 753 (CCPA 1974) (reduction to practice of species established priority to genus). However, as Youssefyeh acknowledges, 2–indanyl compounds and 5–indanyl compounds are different species within the generic interference count. Youssefyeh did not conceive of the 2–indanyl compound as an operative invention on February 27, 1980 because it lacked at that time (and on this record never acquired) possession of a method for making it. Youssefyeh did not conceive of the 5–indanyl compound as an operative invention on October 10, 1980 because it lacked at that time the idea of the 5–indanyl compound, and the method it then possessed was a method for making something else. Thus Youssefyeh did not establish conception of either species before Oka's filing date.

That the October 10 method was found in December, *after* Oka's filing date, to be an effective method of making the 5–indanyl compound did not serve to move the date on which Youssefyeh had the idea of the 5–indanyl compound back to October 10, 1980. There is no evidence that that method could be used to make the 2–indanyl compound, and, given the difference between aromatically-bonded and cycloaliphatically-bonded indanyl glycines, there is no basis for a view that a description or method of making one is applicable to the other. The board made no finding that Youssefyeh had the idea of a 5–indanyl compound before the last week of October 1980. Youssefyeh does not argue, and no

one testified, that it did have that idea before that time. The record would not in any event support such a finding. The board therefore erred in determining that Youssefyeh had established conception as of October 10, 1980.

Because Oka is the senior party, Youssefyeh was required to establish reduction to practice *before* Oka's filing date, or conception before that date coupled with reasonable diligence from just before that date to Youssefyeh's filing date. 35 U.S.C. § 102(g); *see Bey v. Kollonitsch*, 806 F.2d 1024, 1030–31, 231 USPQ 967, 972 (Fed.Cir. 1986). The board's finding that Youssefyeh initiated preparation of a 5–indanyl compound "in the last week of October 1980" supports the conclusion that Youssefyeh failed to establish conception, much less a reduction to practice, of that class of compounds earlier than October 31, 1980. In dealing with a reduction to practice, the court in *Haultain v. DeWindt*, 254 F.2d 141, 117 USPQ 278 (CCPA 1958), stated, "Further, where testimony merely places the acts within a stated time period, the inventor has not established a date for his activities earlier than the last day of the period." *Id.* at 142, 117 USPQ at 279. That rule is equally appropriate in establishing a date of conception, nor does Youssefyeh dispute Oka's position that "the last week in October" means October 31.

Thus Youssefyeh's conception and Oka's filing date are the same, *i.e.*, October 31, 1980. Oka, as the senior party, is presumptively entitled to an award of priority, and Youssefyeh, as the junior party in an interference between pending applications, must overcome that presumption with a preponderance of the evidence. *Morgan v. Hirsch*, 728 F.2d 1449, 1451, 221 USPQ 193, 194 (Fed.Cir.1984); 37 C.F.R. § 1.257(a) (1983). In the event of a tie, therefore, priority must be awarded to the senior party. *Accord Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1580 n. 11, 6

---

**1.** In view of our determination respecting conception, we need not and do not reach the parties' arguments on diligence and reduction to practice, except to note that neither party argues that the dual requirement for conception of an operative invention (idea plus method of making) equates conception with reduction to practice. The latter in this case would involve verification of the compound's utility as a hypotensive agent.

USPQ2d 1001, 1008 n. 11 (Fed.Cir.1988) (In a trademark opposition, "where the evidence is so evenly balanced that no preponderance emerges ..., the party having the burden of persuasion necessarily loses."). Because Youssefyeh, the junior party, failed to show a conception date earlier than Oka's filing date, Oka is entitled to priority. We reverse the board's award of priority to Youssefyeh.

REVERSED.